## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
: 
In re:                                    :     Chapter 11
                                          :
TRIDENT RESOURCES CORP., et al.,          :     Case No. 09-13150 (MFW)
                                          :
                                          :     (Jointly Administered)
                          Debtors.        :
                                          :
                                          :
                                          :
                                          :
------------------------------------------------------------x

## JOINT PLAN OF REORGANIZATION OF
## TRIDENT RESOURCES CORP. AND CERTAIN AFFILIATED
## DEBTORS AND DEBTORS IN POSSESSION

Ira S. Dizengoff (admitted *pro hac vice*)
David A. Kazlow (*pro hac vice* admission pending)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

Scott L. Alberino (admitted *pro hac vice*)
Joanna F. Newdeck (admitted *pro hac vice*)
Daniel J. Harris (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 887-4000 (Telephone)
(202) 887-4288 (Facsimile)

Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700 (Telephone)
(302) 651-7701 (Facsimile)

*Attorneys for the Debtors and Debtors in Possession*

Dated: March 29, 2010

# TABLE OF CONTENTS

EXHIBITS................................................................................................................... iv

ARTICLE I DEFINITIONS, RULES OF INTERPRETATION, AND
          COMPUTATION OF TIME ...........................................................................3

A.      Scope of Definitions.......................................................................................... 3
B.      Definitions......................................................................................................... 3
C.      Rules of Interpretation. .................................................................................. 15
D.      Computation of Time....................................................................................... 16
E.      References to Monetary Figures. .................................................................... 16
F.      Plan Supplement.............................................................................................. 16

ARTICLE II ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS ...........16

2.1     Administrative Claims....................................................................................16
2.2     Priority Tax Claims.........................................................................................17

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS .................................17

3.1     General Rules of Classification. .....................................................................17
3.2     Classification of Claims and Interests............................................................18
3.3     Special Provisions Regarding the Treatment of Allowed Secondary Liability Claims;
        Maximum Recovery. .......................................................................................18

ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS ..........................................19

4.1     Class 1 (Other Priority Claims). ....................................................................19
4.2     Class 2 (Other Secured Claims). ....................................................................19
4.3     Class 3 (General Unsecured Claims)..............................................................20
4.4     Class 4 (2006 Credit Agreement Claims).......................................................20
4.5     Class 5 (2007 Loan Agreement Claims). .......................................................20
4.6     Class 6 (Interests in TRC). .............................................................................20
4.7     Class 7 (Affiliated Debtor Interests)...............................................................21
4.8     Class 8 (Intercompany Claims).......................................................................21

ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN .......................................21

5.1     Impaired Classes of Claims Entitled to Vote..................................................21
5.2     Classes Deemed to Accept the Plan. ..............................................................21
5.3     Acceptance by Impaired Classes.....................................................................21
5.4     Classes Deemed to Reject the Plan. ...............................................................22
5.5     Confirmation without Acceptance by All Impaired Classes. ..........................22

ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN...................................22

6.1     Continued Corporate Existence.......................................................................22
6.2     Limited Consolidation for Voting, Confirmation and Distribution Purposes....................22
6.3     Restructuring Transactions..............................................................................23
6.4     Corporate Governance. ...................................................................................24
6.5     Directors and Officers.....................................................................................24
6.6     Long-Term Incentive Plan. .............................................................................25

| | | |
|---|---|---|
| 6.7 | The Rights Offering. | 25 |
| 6.8 | Issuance of New Common Stock. | 26 |
| 6.9 | Issuance and Distribution of New Common Stock. | 26 |
| 6.10 | Use of Proceeds from Rights Offering; Treatment of Second Lien Credit Agreement Obligations. | 26 |
| 6.11 | Registration Rights Agreement. | 26 |
| 6.12 | Exemptions for Issuance of New Common Stock. | 26 |
| 6.13 | Cancellation of Securities and Agreements. | 26 |
| 6.14 | Preservation of Causes of Action. | 27 |
| 6.15 | Management Equity Incentive Plan. | 27 |
| 6.16 | Exclusivity Period. | 27 |
| 6.17 | Corporate Action. | 28 |
| 6.18 | Effectuating Documents; Further Transactions. | 28 |
| 6.19 | Exemption from Certain Transfer Taxes and Recording Fees. | 28 |

**ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............28

| | | |
|---|---|---|
| 7.1 | General Treatment. | 28 |
| 7.2 | Cure of Defaults. | 29 |
| 7.3 | Rejection Claims. | 29 |
| 7.4 | Assignment. | 29 |
| 7.5 | Mineral Leases. | 30 |
| 7.6 | Survival of Indemnification Provisions. | 31 |
| 7.7 | Survival of Other Employment Arrangements. | 31 |
| 7.8 | Insurance Policies. | 31 |
| 7.9 | Nonoccurrence of Effective Date. | 32 |

**ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS** ............32

| | | |
|---|---|---|
| 8.1 | Record Date for Distributions. | 32 |
| 8.2 | Timing and Calculation of Amounts to Be Distributed. | 32 |
| 8.3 | Disbursing Agent. | 32 |
| 8.4 | Rights and Powers of Disbursing Agent. | 32 |
| 8.5 | Distributions on Account of Claims Allowed After the Effective Date. | 33 |
| 8.6 | Delivery of Distributions and Undeliverable or Unclaimed Distributions. | 33 |
| 8.7 | Withholding and Reporting Requirements. | 34 |
| 8.8 | Setoffs. | 34 |
| 8.9 | Claims Paid or Payable by Third Parties. | 35 |
| 8.10 | No Interest on Disputed Claims. | 35 |
| 8.11 | Postpetition Interest on Claims. | 35 |
| 8.12 | Allocation of Plan Distributions Between Principal and Interest. | 36 |

**ARTICLE IX PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS** ............36

| | | |
|---|---|---|
| 9.1 | Objections to Claims. | 36 |
| 9.2 | No Distributions Pending Allowance. | 36 |
| 9.3 | Estimation of Claims. | 36 |
| 9.4 | Distributions Relating to Disputed Claims. | 37 |
| 9.5 | Disallowed Claims. | 37 |

**ARTICLE X ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE**

CLAIMS ................................................................................................................... 37

10.1    Professional Claims. ............................................................................... 37
10.2    Professional Fee Escrow Account. .......................................................... 38
10.3    Professional Fee Reserve Amount. ......................................................... 38
10.4    Post-Confirmation Date Retention. ......................................................... 38
10.5    Bar Date for Other Administrative Claims. ............................................. 38

ARTICLE XI EFFECT OF PLAN CONFIRMATION ......................................................... 39

11.1    Revesting of Assets. ............................................................................... 39
11.2    Discharge of the Debtors. ........................................................................ 39
11.3    Compromises and Settlements. ............................................................... 40
11.4    Release by the Debtors of Certain Parties. ............................................. 40
11.5    Release by the Holders of Claims and Interests. .................................... 40
11.6    Setoffs. .................................................................................................... 41
11.7    Exculpation. ............................................................................................ 41
11.8    Injunction. ............................................................................................... 41

ARTICLE XII CONFIRMATION OF THE PLAN ............................................................. 41

12.1    Conditions to Confirmation. ................................................................... 41
12.2    Conditions to the Effective Date. ............................................................ 42
12.3    Effect of Failure of Conditions to Effective Date. .................................. 43
12.4    Waiver of Conditions to Confirmation or Consummation. ...................... 43
12.5    Effective Date. ........................................................................................ 43

ARTICLE XIII RETENTION OF JURISDICTION ............................................................ 44

ARTICLE XIV MISCELLANEOUS PROVISIONS ........................................................... 45

14.1    Binding Effect. ....................................................................................... 45
14.2    Payment of Statutory Fees. ..................................................................... 45
14.3    Payment of Fees and Expenses of Prepetition Agents, Backstop Parties and Backstop
        Party Professionals. ................................................................................ 46
14.4    Post-Confirmation Reporting. ................................................................. 46
14.5    Modification and Amendments. ............................................................... 46
14.6    Substantial Consummation. ..................................................................... 46
14.7    Request for Expedited Determination of Taxes. ...................................... 46
14.8    Withholding and Reporting Requirements. .............................................. 47
14.9    Revocation, Withdrawal, or Non-Consummation. .................................... 47
14.10   Notices. ................................................................................................... 47
14.11   Term of Injunctions or Stays. .................................................................. 48
14.12   Severability. ............................................................................................ 48
14.13   Governing Law. ....................................................................................... 49
14.14   Entire Agreement. ................................................................................... 49
14.15   Waiver or Estoppel. ................................................................................ 49
14.16   Conflicts. ................................................................................................. 49

## EXHIBITS

**Exhibit A**    **Canadian Plan**

**Exhibit B**    **Commitment Letter**

**Exhibit C**    **Exit Facility Term Sheet**

**Exhibit D**    **Rights Offering Procedures**

## INTRODUCTION

Trident Resources Corp. and its affiliated debtors and debtors in possession in the above-captioned jointly administered Chapter 11 Cases hereby propose this joint plan of reorganization for the resolution of the outstanding Claims against and Interests in the Debtors. Capitalized terms used herein shall have the meanings ascribed to them in ARTICLE IB of the Plan.

Each of the Debtors is pursuing a parallel reorganization in Canada through the Canadian Proceedings along with the Canadian Petitioners. The Debtors are also petitioners in the Canadian Proceedings in order to secure the benefit of the stay under the CCAA. Effectiveness of the Plan will be conditioned upon the effectiveness of the Canadian Plan in the Canadian Proceedings, and effectiveness of the Canadian Plan will be conditioned upon the effectiveness of the Plan.

The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The distributions to be made to holders of Claims and Interests under the Plan are set forth herein.

The Plan contemplates that voting on and confirmation of the Plan, and distributions to holders of Claims against and Interests in the Debtors in the Chapter 11 Cases and the Canadian Proceedings under the Plan and the Canadian Plan, shall be effected as if the Estates of the Debtors were consolidated for such purposes.[1] The Plan contemplates that solely for such voting, confirmation and distribution purposes, (i) each and every Claim against any Debtor in the Chapter 11 Cases will be treated as if it were a single Claim against all the Debtors and (ii) to the extent that a creditor has a Claim in respect of the same underlying obligation against one or more Debtors in the Chapter 11 Cases and/or against the Debtors in the Canadian Proceedings, such creditor will receive a single recovery in respect of such Claim, which Claim shall be satisfied as set forth herein and in the Canadian Plan. If any Class of Impaired Claims votes to reject the Plan, the Debtors' ability to confirm the Plan with respect to such rejecting Class pursuant to the cramdown standards of section 1129(b) of the Bankruptcy Code will be determined by reference to the treatment to which the holders of Claims in such Class would be entitled were (i) their Claims limited to the specific Debtor(s) that are liable for such Claims, and (ii) the Debtors not treated as if they were consolidated for distribution and confirmation purposes. For the avoidance of doubt, the Debtors are not seeking, and neither the Plan nor the Confirmation Order shall effectuate, substantive consolidation of the Debtors' Estates.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a holder of a Claim or Interest until the Disclosure Statement has been approved by the Bankruptcy Court and distributed to holders of Claims and Interests. The Disclosure Statement relating to the Plan was approved by the Bankruptcy Court on [ ], 2010, and has been distributed simultaneously with the Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, a discussion of the Debtors' history, businesses, properties and operations, consolidated projections for those operations, risk factors associated with the Debtors' consolidated businesses and Plan, a summary and analysis of the Plan, and certain related matters including, among other things, the securities to be issued in connection with the implementation of the Plan and the Canadian Plan. ALL HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ THIS

---

[1]    All parties reserve the right to assert any and all claims against any of the Debtors in the Chapter 11 Cases and the Canadian Proceedings and receive distributions on account of any and all such claims in the event that this Plan is not confirmed.

PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

Subject to the restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in ARTICLE XIII of the Plan, each of the Debtors expressly reserves its respective rights to alter, amend, modify, revoke, or withdraw the Plan with respect to such Debtor, one or more times, prior to the Plan's substantial consummation.

A complete list of the Debtors is set forth below. The list identifies each Debtor by its case number in the Chapter 11 Cases.

## THE DEBTORS

| Case | Number |
|------|--------|
| Trident Resources Corp. | 09-13150 (MFW) |
| Trident USA Corp. | 09-13152 (MFW) |
| Aurora Energy LLC | 09-13154 (MFW) |
| NexGen Energy Canada, Inc. | 09-13151 (MFW) |
| Trident CBM Corp. | 09-13153 (MFW) |

## ARTICLE I

## DEFINITIONS, RULES OF
## INTERPRETATION, AND COMPUTATION OF TIME

### A.    <u>Scope of Definitions.</u>

For purposes of the Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined herein shall have the meanings ascribed to them in <u>Article I.B</u> of the Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### B.    <u>Definitions.</u>

1.    **"2006 Agent"** means Credit Suisse, Toronto Branch, as administrative agent and collateral agent under the 2006 Credit Agreement.

2.    **"2006 Backstop Parties"** means those parties holding 2006 Credit Agreement Claims who are signatories to the Commitment Letter.

3.    **"2006 Credit Agreement"** means that certain Secured Credit Facility dated as of November 24, 2006, as amended from time to time, among TRC, certain of its subsidiaries, Credit Suisse, Toronto Branch, as administrative agent and collateral agent, and the lenders party thereto.

4.    **"2006 Credit Agreement Claims"** means those Claims against the Debtors arising under or in connection with the 2006 Credit Agreement.

5.    **"2006 New Common Stock"** means 40% of the New Common Stock, prior to giving effect to dilution resulting from the Management Equity Issuance and the Contingent Value Rights.

6.    **"2007 Agent"** means Wells Fargo, N.A., as administrative agent under the 2007 Loan Agreement.

7.    **"2007 Backstop Commitment"** means the portion of the Equity Put Commitment to which the 2007 Backstop Parties, severally and not jointly, have committed, pursuant to the Commitment Letter.

8.    **"2007 Backstop Parties"** means the parties who are signatories to the Commitment Letter and do not hold 2006 Credit Agreement Claims.

9.    **"2007 Loan Agreement"** means that certain Subordinated Loan Agreement dated as of August 20, 2007, as amended from time to time, among TRC, certain of its subsidiaries, Wells Fargo, N.A., as administrative agent, and the lenders party thereto.

10.    **"2007 Loan Agreement Claims"** means those Claims against the Debtors arising under or in connection with the 2007 Loan Agreement.

11.    **"Accredited Investor"** means an accredited investor as defined in Rule 501 of Regulation D of the U.S. Securities Act of 1933, as amended.

12.     **"Accrued Professional Compensation"** means, at any given moment, all accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been filed for such fees and expenses. To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

13.     **"Administrative Claim"** means a Claim against a Debtor or its Estate arising on or after the Petition Date and prior to the Effective Date for a cost or expense of administration in the Chapter 11 Cases of a kind that is entitled to priority or superpriority under sections 364(c)(1), 503(b), 503(c), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 330(a) or 331 of the Bankruptcy Code, including Professional Claims; (c) the Equity Put Fee, Backstop Indemnification Obligations and Expense Reimbursement; and (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code.

14.     **"Administrative Claims Bar Date"** means the deadline for filing an Administrative Claim (other than an Administrative Claim for the Equity Put Fee, Backstop Indemnification Obligations, or Expense Reimbursement or any other claim under the Commitment Letter), which Claims must be filed so as to actually be received on or before 5 p.m. prevailing Eastern time on the date that is 30 calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.

15.     **"Affiliated Debtors"** means all of the Debtors other than Trident Resources Corp.

16.     **"Affiliate"** has the meaning given such term by section 101(2) of the Bankruptcy Code.

17.     **"Allowed Claim"** means a Claim, or any portion thereof,

(a)     that has been allowed by a Final Order of the Bankruptcy Court (or such other court or forum as the Reorganized Debtors and the holder of such Claim agree may adjudicate such Claim and objections thereto);

(b)     as to which a proof of claim has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, or is allowed by any Final Order of the Bankruptcy Court or by other applicable non-bankruptcy law, but only to the extent that such claim is identified in such proof of claim in a liquidated and noncontingent amount, and either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied by a Final Order;

(c)     as to which no proof of claim has been filed with the Bankruptcy Court and (i) which is Scheduled as liquidated in an amount other than zero and not contingent or disputed, but solely to the extent of such liquidated amount and (ii) no objection to its allowance has been filed by the Debtors or the Reorganized Debtors, as applicable, or any other party in interest, within the periods of limitation fixed by the Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court; or

      **(d)**     that is expressly allowed in a liquidated amount in the Plan.

      **18.**     **"Allowed Class . . . Claim"** or **"Allowed Class . . . Interest"** means an Allowed Claim or an Allowed Interest in the specified Class.

      **19.**     **"Allowed Interest"** means an Interest in any Debtor, which has been or hereafter is listed by such Debtor in its books and records as liquidated in an amount and not disputed or contingent; provided, however, that to the extent an Interest is a Disputed Interest, the determination of whether such Interest shall be allowed and/or the amount of any such Interest shall be determined, resolved, or adjudicated, as the case may be, in the manner in which such Interest would have been determined, resolved, or adjudicated if the Chapter 11 Cases had not been commenced; provided further, that proofs of Interest need not and should not be filed in the Bankruptcy Court with respect to any Interests; and provided further, that the Reorganized Debtors, in their discretion, may bring an objection or motion with respect to a Disputed Interest before the Bankruptcy Court for resolution.

      **20.**     **"Approval Order"** means that order entered by the Bankruptcy Court on February 23, 2010, authorizing and approving (I) the Debtors' Entry into the Commitment Letter, (II) the Equity Put Fee, Expense Reimbursement, and Indemnification Obligations, (III) the Procedures for the Sale and Investor Solicitation Process, and (IV) the Form and Manner of Notice Thereof.

      **21.**     **"Avoidance Claims"** means Causes of Action or defenses arising under any of sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute such Causes of Action.

      **22.**     **"Backstop Indemnification Obligations"** means the Indemnification Obligations, as defined in the Commitment Letter.

      **23.**     **"Backstop Parties"** means the 2006 Backstop Parties and the 2007 Backstop Parties.

      **24.**     **"Backstop Party Professionals"** has the meaning ascribed to such term in the Commitment Letter.

      **25.**     **"Ballot"** means the ballot distributed with the Disclosure Statement or Information Circular, as applicable, for voting on the Plan.

      **26.**     **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§101 et seq.

      **27.**     **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Cases.

      **28.**     **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

29. **"Bar Date"** means the deadlines set by the Bankruptcy Court pursuant to the Bar Date Order or other Final Order for filing proofs of claim in the Chapter 11 Cases, as the context may require.

30. **"Bar Date Order"** means the order entered by the Bankruptcy Court on March 23, 2010 that established the Bar Date, and any subsequent order supplementing such initial order or relating thereto.

31. **"Business Day"** means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

32. **"Canadian Bar Date Order"** means the order entered by the Canadian Court on [ ], 2010 that established the Canadian bar date, and any subsequent order supplementing such initial order or relating thereto.

33. **"Canadian Court"** means the Court of Queen's Bench of the Province of Alberta, Judicial District of Calgary.

34. **"Canadian Petitioners"** means Trident Exploration Corp., Fort Energy Corp., Fenergy Corp., 981405 Alberta Ltd and 981422 Alberta Ltd.

35. **"Canadian Plan"** means the Plan of Arrangement and Compromise, a copy of which is attached hereto as Exhibit A, as such plan may be amended, varied or supplemented from time to time in accordance with its terms and the order approving the same. For the avoidance of doubt, the Canadian Plan and all amendments, modifications, and/or supplements thereto shall be in form and on terms acceptable to the Required Backstop Parties.

36. **"Canadian Proceedings"** means the proceedings currently pending before the Canadian Court under the CCAA commenced by the Canadian Petitioners and the Debtors on September 8, 2009, action number 0901-13483.

37. **"Cash"** means legal tender of the United States of America and equivalents thereof.

38. **"Causes of Action"** means any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, now-owned, hereafter acquired, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise, including Avoidance Claims, unless otherwise waived or released by the Debtors, with the consent of the Required Backstop Parties, or the Reorganized Debtors to the extent such Cause of Action is a Cause of Action held by the Debtors or the Reorganized Debtors.

39. **"CCAA"** means the Companies' Creditors Arrangement Act (Canada), R.S.C. 1985, c. C-36, as amended.

40. **"Chapter 11 Cases"** means the cases commenced under chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date in the Bankruptcy Court and being jointly administered with one another under Case No. 09-13150 (MFW), and the phrase **"Chapter 11 Case"**

when used with reference to a particular Debtor means the particular case under chapter 11 of the Bankruptcy Code that such Debtor commenced on the Petition Date in the Bankruptcy Court.

41. **"Claims and Noticing Agent"** means The Garden City Group, Inc.

42. **"Claims/Interests Objection Deadline"** means, as applicable (except for Administrative Claims), (a) the day that is the latest of (i) the first Business Day that is at least 180 days after the Effective Date, (ii) as to proofs of claim filed after the Bar Date, the first Business Day that is at least 180 days after a Final Order is entered deeming the late filed claim to be treated as timely filed, or (iii) 30 days after entry of a Final Order overruling all pending objections to such Claim, or (b) such later date as may be established by the Bankruptcy Court upon request of the Reorganized Debtors, without any further notice to other parties-in-interest.

43. **"Class"** means a category of holders of Claims or Interests as described in ARTICLE III of the Plan.

44. **"Commitment Letter"** means that certain agreement, dated February 22, 2010, among the Debtors and the Backstop Parties, a copy of which is attached hereto as Exhibit B.

45. **"Company"** means the Debtors and the Canadian Petitioners.

46. **"Confirmation Date"** means the date of entry of the Confirmation Order.

47. **"Confirmation Hearing"** means the hearing before the Bankruptcy Court held under section 1128 of the Bankruptcy Code to consider confirmation of the Plan and related matters, as such hearing may be adjourned or continued from time to time.

48. **"Confirmation Order"** means the order entered by the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

49. **"Contingent Value Rights"** means the right of each Backstop Party, or its designee, that is a holder of 2007 Loan Agreement Claims, to receive its Pro Rata share of 6% of the New Common Stock issued or issuable upon the Effective Date (on a fully diluted basis subject solely to Pro Rata dilution for any shares issuable under any Management Equity Issuance) upon the earlier of (i) the occurrence of certain triggering events (to be agreed between the Backstop Parties that are not holders of 2007 Loan Agreement Claims, the Backstop Parties that are holders of the 2007 Loan Agreement Claims, and the Company) or (ii) the fifth year anniversary of the Effective Date, subject to the condition that the Debtors' total enterprise value at the time of such triggering event or such fifth year anniversary is at least $966 million.

50. **"Contingent Value Rights Certificates"** means the certificates for the Contingent Value Rights issued by Reorganized TRC on the Initial Distribution Date, in form and substance satisfactory to the 2007 Backstop Parties which have committed to provide the majority of the 2007 Backstop Commitment.

51. **"Cross-Border Protocol"** means that certain protocol, approved by final order of the Bankruptcy Court on [_____], 2010 and the Canadian Court on February 23, 2010, which implements basic administrative procedures necessary to coordinate certain activities between the Canadian Proceedings and Chapter 11 Cases to ensure the maintenance of each courts' respective independent jurisdiction and to give effect to the doctrines of comity.

**52.** **"Data Room"** means the virtual data room operated by Akin Gump Strauss Hauer & Feld LLP entitled "Trident/Advisor".

**53.** **"Debtors"** means, collectively, the debtors and debtors-in-possession identified on page 2 hereof, and **"Debtor"** means any one of the Debtors.

**54.** **"Disallowed Claim"** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**55.** **"Disallowed Interest"** means an Interest or any portion thereof that has been disallowed by a Final Order or a settlement.

**56.** **"Disbursing Agent"** means Reorganized Debtors, or any Person designated by them, in their sole discretion, to serve as a disbursing agent, or to assist in the making of disbursements, under the Plan.

**57.** **"Disclosure Statement"** means the written disclosure statement (including all schedules thereto or referenced therein) that relates to the Plan, as such disclosure statement may be amended, modified, or supplemented from time to time, all as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

**58.** **"Disputed Claim"** or **"Disputed Interest"** means, in the case of Claims, a Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim, and in the case of Interests, an Interest or any portion thereof that is neither an Allowed Interest nor a Disallowed Interest.

**59.** **"Distribution Date"** means the date, selected by the Reorganized Debtors, upon which distributions to holders of Allowed Claims entitled to receive distributions under the Plan shall commence; provided, however, that the Distribution Date shall occur on or as soon as reasonably practicable after the Effective Date.

**60.** **"Distribution Record Date"** means the date that the Confirmation Order is entered by the Bankruptcy Court.

**61.** **"Effective Date"** means a Business Day on or after the Confirmation Date specified by the Debtors on which (i) no stay of the Confirmation Order is in effect and (ii) the conditions to the effectiveness of the Plan specified in ARTICLE XII hereof have been satisfied or waived, which date shall be no later than five (5) business days after such conditions have been satisfied or waived; provided, however, that the Debtors, with the consent of the Required Backstop Parties, may defer the occurrence of the Effective Date for a period of no more than fifteen (15) days beyond such date in order to facilitate the closing of the Exit Facility; provided further, however, that the Effective Date shall be no later than July 2, 2010.

**62.** **"Eligible 2006 Holder"** means each holder, as of the Record Date, of 2006 Credit Agreement Claims who is an Accredited Investor.

**63.** "**Eligible 2007 Holder**" means each holder, as of the Record Date, of 2007 Loan Agreement Claims who is an Accredited Investor.

**64.** "**Equity Put Commitment**" has the meaning ascribed to such term in the Commitment Letter.

**65.** "**Equity Put Fee**" has the meaning ascribed to such term in the Commitment Letter.

**66.** "**Estates**" means the bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code.

**67.** "**Exhibit**" means an exhibit annexed either to the Plan or to the Disclosure Statement.

**68.** "**Exit Facility**" means the credit facility to be entered into pursuant to the Exit Facility Agreement.

**69.** "**Exit Facility Agreement**" means that agreement to be executed by Reorganized TRC on or before the Effective Date, including all agreements, amendments, supplements or documents related thereto, which provides for an exit credit facility in an aggregate principal amount of not less than $[505 million], the substantially final form of which shall be consistent with the Exit Facility Term Sheet and acceptable to the Debtors and the Required Backstop Parties.

**70.** "**Exit Facility Term Sheet**" means the term sheet, a copy of which is attached hereto as Exhibit C, which sets forth the Exit Facility commitment and the terms and conditions thereof.

**71.** "**Expense Reimbursement**" has the meaning ascribed to it in the Commitment Letter.

**72.** "**Face Amount**" means, (a) when used in reference to a Disputed Claim or Disallowed Claim, the full stated liquidated amount claimed by the holder of a Claim in any proof of claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**73.** "**Fee Claim**" means a Claim under sections 328, 330(a), 331, 503 OR 1103 of the Bankruptcy Code.

**74.** "**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Cases or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, vacated, modified or amended, and as to which the time to appeal or petition for certiorari or move for a new trial, reargument or rehearing has expired, and as to which no appeal or petition for certiorari or other proceeding for a new trial, reargument or rehearing that has been timely taken is pending, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

**75.** "**Guarantee**" means each guarantee under the 2006 Credit Agreement and 2007 Loan Agreement.

76. **"General Unsecured Claims"** means all general unsecured claims against the Debtors, excluding any deficiency claims under the 2006 Credit Agreement and/or claims under the 2007 Loan Agreement.

77. **"Impaired"** refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

78. **"Indemnification Agreements"** means the employment contracts, that are identified in the Data Room as of the Confirmation Hearing, for the current and former directors, officers, members (including *ex officio* members), employees, attorneys, other professionals and agents of the Debtors and such current and former directors, officers and members' respective Affiliates.

79. **"Indemnification Provisions"** means the indemnification provisions currently in place whether in the bylaws, certificates of incorporation or other formation documents in the case of a limited liability company, board resolutions or the Indemnification Agreements.

80. **"Intercompany Claim"** means a Claim by a Debtor against another Debtor or affiliated non-Debtor.

81. **"Interim Compensation Order"** means that certain order of the Bankruptcy Court allowing Professionals to seek interim compensation in accordance with the compensation procedures approved therein, as may have been modified by a Bankruptcy Court order approving the retention of Professionals.

82. **"Interest"** means the legal, equitable, contractual, and other rights of any Person with respect to the common stock, preferred stock or any other equity securities of, or ownership interests in, each of the Debtors.

83. **"IRC"** means the Internal Revenue Code of 1986, as amended.

84. **"Judicial Code"** means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

85. **"Junior Creditor Rights"** has the meaning ascribed to it in Article 6.7(c).

86. **"Management Equity Issuance"** means up to 7.5% of the New Common Stock on a fully diluted basis as of the Effective Date reserved for issuance under the Management Equity Incentive Plan.

87. **"Management Equity Incentive Plan"** means that certain post-Effective Date management equity incentive plan, the form of which shall be included in the Plan Supplement, which shall consist of the Management Equity Issuance.

88. **"Mineral Leases"** means any leases by which the Debtors are granted the right to explore for and produce minerals, including liquid or gaseous hydrocarbons, oil and gas.

89. **"Monitor"** means FTI Consulting, Canada ULC in its capacity as the monitor appointed by the Canadian Court in the Canadian Proceedings.

90. **"New Board"** means the initial board of directors of Reorganized TRC which shall be disclosed in the Plan Supplement and which shall be constituted as provided in Article VI of this Plan.

**91.** **"New Bylaws"** means the form of the bylaws of each of the Reorganized Debtors, acceptable to the Required Backstop Parties, which form will be included in the Plan Supplement.

**92.** **"New Certificate of Incorporation"** means the certificates of incorporation of each of the Reorganized Debtors, acceptable to the Required Backstop Parties, which form will be included in the Plan Supplement.

**93.** **"New Common Stock"** means the common stock, par value $0.01 per share, of Reorganized TRC issued on the Distribution Date.

**94.** **"New Money Investor"** means each Eligible 2006 Holder and Eligible 2007 Holder that exercises its Subscription Rights in connection with the Rights Offering.

**95.** **"New Shareholders' Agreement"** means that certain agreement to be executed on or before the Effective Date providing for, among other things, the rights and obligations of the Holders of the New Common Stock, the form of which will be included in the Plan Supplement and acceptable to the Required Backstop Parties.

**96.** **"Ordinary Course Professionals Order"** means the order entered by the Bankruptcy Court on October 5, 2009 authorizing the retention of professionals utilized by the Debtors in the ordinary course of business.

**97.** **"Other Priority Claims"** means all claims against the Debtors accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Administrative Claims or Priority Tax Claims.

**98.** **"Other Secured Claims"** means a Secured Claim against the Debtors, other than Priority Tax Claims and 2006 Credit Agreement Claims.

**99.** **"Person"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other entity.

**100.** **"Petition Date"** means September 8, 2009.

**101.** **"Plan"** means this joint plan of reorganization for the Debtors, including all exhibits attached hereto or referenced herein, as the same may be amended, modified or supplemented in accordance with its terms.

**102.** **"Plan Supplement"** means the compilation of documents and forms of documents, schedules, attachments and exhibits to the Plan, to be filed by the Debtors, each of which shall be satisfactory to the Required Backstop Parties, by the Plan Supplement Filing Date, comprising of, without limitation, the following: (a) New Bylaws; (b) New Certificate of Incorporation; (c) the identity of the members of the new boards of directors and the nature and compensation for any director who is an "insider" under the Bankruptcy Code; (d) a list of executory contracts and unexpired leases to be rejected pursuant to the Plan; (e) the New Shareholders' Agreement; (f) the Registration Rights Agreement; (g) the Exit Facility Agreement or a commitment letter to provide the Exit Facility; (h) a list of retained Causes of Action; (i) the Contingent Value Rights Certificates; (j) the Management Equity Incentive Plan; (k) the Registration Rights Agreement; and (l) a schedule of those employment agreements with members

of existing senior management and/or other employees that shall be assumed, which shall include the existing employments with the Company's Chief Executive Officer and Chief Financial Officer; and all exhibits, attachments, supplements, annexes, schedules, and ancillary documents related to each of the foregoing.

103. **"Plan Supplement Filing Date"** means the date on which the Plan Supplement shall be filed with the Bankruptcy Court, which date shall be at least ten days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice.

104. **"Prepetition Agents"** means, collectively, the 2006 Agent and the 2007 Agent.

105. **"Priority Tax Claim"** means any unsecured Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

106. **"Professional Fees Bar Date"** means the Business Day that is thirty (30) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

107. **"Pro Rata"** means, at any time, the proportion that the Face Amount of an Allowed Claim in a particular Class bears to the aggregate Face Amount of all Allowed Claims in such Class, unless the Plan provides otherwise. Until all Disputed Claims in any Class are resolved, such Disputed Claims shall be treated as Allowed Claims in their Face Amount for the purposes of calculating the Pro Rata distribution of property to the holders of Allowed Claims in such Class.

108. **"Professional"** means (a) any Person retained in the Chapter 11 Cases by separate Bankruptcy Court order pursuant to sections 327 and 1103 of the Bankruptcy Code or (b) any Person seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code; provided, however, that Professional does not include any Person retained pursuant to the Ordinary Course Professionals Order.

109. **"Professional Claim"** means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred on or after the Petition Date and prior to and including the Effective Date.

110. **"Professional Fee Escrow Account"** means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount funded and maintained by the Reorganized Debtors on and after the Effective Date solely for the purpose of paying all allowed and unpaid fees and expenses of Professionals in the Chapter 11 Cases.

111. **"Professional Fee Reserve Amount"** means Accrued Professional Compensation through the Effective Date as estimated by the Professionals in accordance with Article 10.3.

112. **"Professional Fee Order"** means the order entered by the Bankruptcy Court on January 28, 2010, authorizing the interim payment of Professional Claims.

113. **"Record Date"** means the date for determining which holders of Claims and Interests are entitled to receive the Disclosure Statement and vote to accept or reject the Plan, as applicable, which date is _____, 2010, as set forth in the Order approving the Disclosure Statement.

**114.** **"Registration Rights Agreement"** means the Registration Rights Agreement, dated as of the Effective Date, among certain holders of New Common Stock and Reorganized TRC, the form of which will be included in the Plan Supplement and shall be acceptable to the Required Backstop Parties.

**115.** **"Reinstated"** or **"Reinstatement"** means rendering a Claim or Interest Unimpaired. Unless the Plan specifies a particular method of Reinstatement, when the Plan provides that a Claim or Interest will be Reinstated, such Claim or Interest will be Reinstated, at the Debtors' sole discretion, in accordance with one of the following: (a) the legal, equitable and contractual rights to which such Claim or Interest entitles the holder will be unaltered; or (b) notwithstanding any contractual provisions or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (i) any such default that occurred before or after the commencement of the applicable Chapter 11 Case, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, will be cured; (ii) the maturity of such Claim or Interest as such maturity existed before such default will be reinstated; (iii) the holder of such Claim or Interest will be compensated for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, the holder of such Claim will be compensated for any actual pecuniary loss incurred by such holder as a result of such failure; and (v) the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest will not otherwise be altered.

**116.** **"Release Obligor"** has the meaning ascribed to it in Article 11.5 of the Plan.

**117.** **"Released Parties"** means, collectively, (a) each current and former officer of the Debtors, all members of the boards of directors of the Debtors, current employees of the Debtors, and current professional advisors to the Debtors, in each case in their respective capacities, (b) all Professionals retained by the Debtors in the Chapter 11 Cases, (c) the Prepetition Agents, in their capacity as such; (d) the Backstop Parties, in their capacity as such; (e) the New Money Investors, in their capacity as such; (f) all holders of Claims who vote to accept the Plan; and (g) with respect to each of the Debtors and the above-named Persons, such Person's affiliates, advisors, principals, employees, officers, directors, representatives, members, financial advisors, attorneys, accountants, investment bankers, consultants, agents, and other representatives and professionals.

**118.** **"Reorganized Debtor"** or **"Reorganized Debtors"** means, individually, any Debtor and, collectively, all Debtors, as reorganized under and pursuant to the Plan, or any successor thereto, by merger, consolidation, transfer of substantially all assets or otherwise, on and after the Effective Date.

**119.** **"Reorganized TRC"** means Trident Resources Corp., as reorganized under and pursuant to the Plan, or any successor thereto, by merger, consolidation, transfer of substantially all assets or otherwise, on and after the Effective Date.

**120.** **"Required Backstop Parties"** means the Backstop Parties that have committed to provide, in aggregate, at least 80% of the Equity Put Commitment pursuant to the Commitment Letter.

**121.** **"Restructuring Transactions"** means any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including, but not limited to, the consolidation, merger, recapitalization, contribution of assets, the Rights Offering, or other transaction in which a

Debtor merges with, transfers some or substantially all of its assets or liabilities to, or issues stock or indebtedness to, another Debtor, on or following the Confirmation Date.

122. **"Retained Actions"** means all Claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's Estate may hold against any Person, other than the Released Parties.

123. **"Rights Offering"** means the offering of the Subscription Rights by the Debtors to the Holders of the 2006 Credit Agreement Claims and 2007 Loan Agreement Claims in accordance with the Rights Offering Procedures and the Plan.

124. **"Rights Offering Procedures"** means those certain Rights Offering Procedures, setting forth the terms and conditions of the Rights Offering, in substantially the form attached hereto as Exhibit D.

125. **"Sanction Order"** means the order of the Canadian Court under the CCAA approving the Canadian Plan in the Canadian Proceedings which shall be in form and on terms acceptable to the Required Backstop Parties.

126. **"Scheduled"** means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

127. **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed in the Chapter 11 Cases by the Debtors, which incorporate by reference the global notes and statement of limitations, methodology, and disclaimer regarding the Debtors' schedules and statements, as such schedules or statements have been or may be further modified, amended, or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

128. **"Secondary Liability Claim"** means a Claim that arises from a Debtor being liable as a guarantor of, or otherwise being jointly, severally or secondarily liable for, any contractual, tort, guaranty or other obligation of another Debtor, including any Claim based on: (a) vicarious liability; (b) liabilities arising out of piercing the corporate veil, alter ego liability or similar legal theories; (c) guaranties of collection, payments or performance; (d) indemnity bonds, obligations to indemnify or obligations to hold harmless; (e) performance bonds; (f) contingent liabilities arising out of contractual obligations or out of undertakings (including any assignment or transfer) with respect to leases, operating agreements or other similar obligations made or given by a Debtor or relating to the obligations or performance of another Debtor; (g) several liability of a member of a consolidated (or equivalent) group of corporations for taxes of other members of the group or of the entire group; or (h) any other joint or several liability, including Claims for indemnification or contribution or subrogation, that any Debtor may have in respect of any obligation that is the basis of a Claim.

129. **"Second Lien Credit Agreement"** means that certain Secured Term Loan Agreement dated as of April 25, 2006, as amended from time to time, among TEC, certain of its subsidiaries, Credit Suisse, Toronto Branch, as administrative agent and collateral agent, and the lenders party thereto.

130. **"Second Lien Credit Agreement Obligations"** means the obligations arising under the Second Lien Credit Agreement.

131.    **"Secured Claim"** means a Claim, secured by a security interest in or a lien on property in which a Debtor's Estate has an interest, which security interest or lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Claim holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

132.    **"Securities Act"** means the Securities Act of 1933, as now in effect or hereafter amended.

133.    **"Senior Creditor Rights"** has the meaning ascribed to it in Article 6.7.

134.    **"Solicitation Procedures Order"** means the order entered by the Bankruptcy Court on _____, 2010 approving the Disclosure Statement and authorizing the procedures by which solicitation of votes on the Plan is to take place, among other matters. For the avoidance of doubt, the Solicitation Procedures Order and all amendments, modifications, and/or supplements thereto shall be in form and substance acceptable to the Required Backstop Parties.

135.    **"Subscription Rights"** means the non-certified subscription rights to purchase shares of New Common Stock in connection with the Rights Offering on the terms and subject to the conditions set forth in Article 6.7.

136.    **"TEC"** means Trident Exploration Corp.

137.    **"Term Sheet"** means that certain restructuring term sheet attached as an exhibit to the Commitment Letter.

138.    **"TRC"** means Trident Resources Corp.

139.    **"Unimpaired"** means, with respect to a Claim, any Claim that is not Impaired.

140.    **"Unsubscribed Shares"** means those shares of New Common Stock issued in connection with the Rights Offering that are not subscribed for pursuant to the Rights Offering.

141.    **"Voting Deadline"** means [ ], at 5:00 p.m. prevailing Eastern time.

**C.    Rules of Interpretation.**

For purposes of the Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter; (c) any reference in the Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented; (d) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (f) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) subject to the provisions of any contract, certificates of incorporation,

bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

### D.  Computation of Time.

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

### E.  References to Monetary Figures.

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### F.  Plan Supplement.

All Plan Supplement documents are incorporated into and are a part of the Plan as if set forth in full herein. All Plan Supplement documents shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date. After the Plan Supplement Filing Date, copies of the Plan Supplement documents may be obtained upon written request to: TRD Bankruptcy Administration, c/o The Garden City Group, Inc., P.O. Box 9545, Dublin, OH 43017-4845 or by downloading such exhibits from the Debtors' informational website at http://www.tridentrestructuring.com. To the extent any Plan Supplement document is inconsistent with the terms of the Plan and unless otherwise provided for in the Confirmation Order, the terms of the Plan Supplement document shall control as to the transactions contemplated thereby and the terms of the Plan shall control as to any Plan provision that may be required under the Plan Supplement document.

## ARTICLE II

## ADMINISTRATIVE EXPENSES AND
## PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in ARTICLE III.

### 2.1  Administrative Claims.

Except to the extent that a holder of an Allowed Administrative Claim agrees to a different treatment (agreed to by the Debtors with the consent of the Required Backstop Parties, which consent shall not be unreasonably withheld), the Debtors shall pay to such holder Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the earlier of (a) the Distribution Record Date or (b) the date when an Administrative Claim becomes payable pursuant to an order of the Bankruptcy Court or any agreement between a Debtor (or a Reorganized Debtor) and the holder of such Administrative Claim, or in either case, such other date as the holder of such Allowed Administrative Claim and the applicable Reorganized Debtor may agree; provided, however, that Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, or liabilities arising under loans or advances to or other obligations incurred by the Debtors, as debtors in possession, whether or not incurred in the ordinary course of business, shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance

with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions; provided further, that in no event shall a post-petition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, alleged obligations arising from personal injury, property damage, products liability, consumer complaints, employment law (excluding claims arising under workers' compensation law), secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an obligation which is payable in the ordinary course of business.

## 2.2 Priority Tax Claims.

On the later of (a) the date a Priority Tax Claim becomes an Allowed Priority Tax Claim or (b) the date a Priority Tax Claim first becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the holder of such Priority Tax Claim, at the sole option of the Debtors (or the Reorganized Debtors), such holder of an Allowed Priority Tax Claim shall be entitled to receive, on account of such Priority Tax Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Priority Tax Claim, (i) Cash equal to the unpaid portion of such Allowed Priority Tax Claim, (ii) treatment in any other manner such that its Allowed Priority Tax Claims shall not be Impaired, including periodic payments on a quarterly basis over a period ending not later than 5 years after the Petition Date, in accordance with the provisions of sections 511 and 1129(a)(9)(C) of the Bankruptcy Code, or (iii) such other treatment as to which the Reorganized Debtor and such holder shall have agreed upon in writing.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.1 General Rules of Classification.

(a) Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described above, have not been classified and are not entitled to vote on the Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

(b) The Debtors shall be treated as if they were consolidated solely for Plan voting, confirmation and distribution purposes as described in Article 6.2; provided, however, that if any Class of Impaired Claims votes to reject the Plan, the Debtors' ability to confirm the Plan with respect to such rejecting Class pursuant to the cramdown standards of section 1129(b) of the Bankruptcy Code will be determined by reference to the treatment to which the holders of Claims in such Class would be entitled were (i) their Claims limited to the specific Debtor(s) that are liable for such Claims, and (ii) the Debtors not treated as consolidated for distribution and confirmation purposes. This limited consolidation treatment is designed to consensually pool the assets and liabilities by the Debtors solely to implement the settlements and compromises reached by the primary constituencies in the Chapter 11 Cases and the Canadian Proceedings.

### 3.2 Classification of Claims and Interests.

The following table designates the classes of Claims against and Interests in the Debtors and specifies which of those classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan, and (iii) either deemed to accept or reject the Plan. A Claim or Interest is designated in a particular class only to the extent it falls within the description of that class, and is classified in any other class to the extent that a portion thereof falls within the description of such other class.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims | Impaired | No (deemed to reject) |
| 4 | 2006 Credit Agreement Claims | Impaired | Yes |
| 5 | 2007 Loan Agreement Claims | Impaired | Yes |
| 6 | Interests in TRC | Impaired | No (deemed to reject) |
| 7 | Affiliated Debtor Interests | Unimpaired | No (deemed to accept) |
| 8 | Intercompany Claims | Unimpaired | No (deemed to accept) |

### 3.3 Special Provisions Regarding the Treatment of Allowed Secondary Liability Claims; Maximum Recovery.

Consistent with the intent to provide a single recovery in respect of all Claims filed against one or more of the Debtors, the classification and treatment of Allowed Claims under the Plan (subject to Article 5.5 of the Plan) shall take into consideration and shall be deemed to be in full satisfaction, release and discharge of, and in exchange for, all Allowed Claims and all Allowed Secondary Liability Claims related to such Allowed Claims, whether filed in the Chapter 11 Cases, the Canadian Proceedings or both, such that on the Effective Date, Allowed Secondary Liability Claims will be treated as follows:

(a)     The Allowed Secondary Liability Claims arising from or related to any Debtor's joint or several liability for the obligations under any executory contract or unexpired lease that is being assumed or deemed assumed by another Debtor or Reorganized Debtor, or under any executory contract or unexpired lease that is being assumed by and assigned to another Debtor or Reorganized Debtor, will be Reinstated and the non-Debtor counterparty shall be deemed to have adequate assurance of future performance under the applicable executory contract or unexpired lease.

(b)     Except as provided in Article 3.3(a), holders of Allowed Secondary Liability Claims against any Debtor will be entitled to only one distribution in respect of the primary and secondary liabilities related to the underlying Allowed Claim to which such Allowed Secondary Liability Claim relates and will be deemed satisfied in full by the distributions on account of the related underlying Allowed Claim. Notwithstanding the existence of a Secondary Liability Claim, no multiple recovery on account of any Allowed Claim against any Debtor will be provided or permitted. Any

Intercompany Claim that constitutes a Secondary Liability Claim for indemnification, contribution or subrogation that any Debtor may have in respect of any obligation that is the basis of a Claim shall be deemed to be without any value and shall be released and cancelled as of the Effective Date.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS

**4.1 Class 1 (Other Priority Claims).**

**(a)** *Classification:* Class 1 consists of Other Priority Claims.

**(b)** *Treatment:* Except to the extent that a holder of an Allowed Other Priority Claim (i) has been paid by the Debtors, in whole or in part, prior to the Effective Date or (ii) agrees to a less favorable treatment, each holder of an Allowed Other Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for such Other Priority Claim, Cash in the full amount of such Allowed Other Priority Claim.

**(c)** *Voting:* Class 1 is Unimpaired, and the holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

**4.2 Class 2 (Other Secured Claims).**

**(a)** *Classification:* Class 2 consists of the Other Secured Claims.

**(b)** *Treatment:* Except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, at the option of the Debtors (with the consent of the Required Backstop Parties which consent shall not be unreasonably withheld) or the Reorganized Debtors, (i) each Allowed Other Secured Claim shall be reinstated and Unimpaired in accordance with section 1124(2) of the Bankruptcy Code, or (ii) each holder of an Allowed Other Secured Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Other Secured Claim, either (w) Cash in the full amount of such Allowed Other Secured Claim, including any postpetition interest accrued pursuant to section 506(b) of the Bankruptcy Code, (x) the proceeds of the sale or disposition of the collateral securing such Allowed Other Secured Claim to the extent of the value of the holder's secured interest in such collateral, (y) the collateral securing such Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (z) such other distribution as necessary to satisfy the requirements of section 1129 of the Bankruptcy Code.

**(c)** *Voting:* Class 2 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

### 4.3 Class 3 (General Unsecured Claims).

(a) *Classification:* Class 3 consists of General Unsecured Claims.

(b) *Treatment:* Holders of General Unsecured Claims shall receive no property under the Plan and such General Unsecured Claims shall be deemed cancelled as of the Effective Date.

(c) *Voting:* Holders of General Unsecured Claims are Impaired. Each holder of a General Unsecured Claim is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and is not entitled to vote to accept or reject the Plan.

### 4.4 Class 4 (2006 Credit Agreement Claims).

(a) *Classification:* Class 4 consists of 2006 Credit Agreement Claims.

(b) *Allowance:* The 2006 Credit Agreement Claims shall be Allowed and be deemed Allowed in an amount of no less than US$422.34 million on account of outstanding loans under the 2006 Credit Agreement.

(c) *Treatment:* Each holder of 2006 Credit Agreement Claims shall receive, on the Distribution Date, in full and final satisfaction of the 2006 Credit Agreement Claims, its Pro Rata share of (a) the 2006 New Common Stock and (b) the Senior Creditor Rights.

(d) *Voting:* Holders of 2006 Credit Agreement Claims are Impaired. Therefore, each holder of a 2006 Credit Agreement Claim is entitled to vote to accept or reject the Plan.

### 4.5 Class 5 (2007 Loan Agreement Claims).

(a) *Classification:* Class 5 consists of 2007 Loan Agreement Claims.

(b) *Allowance:* The 2007 Loan Agreement Claims shall be Allowed and be deemed Allowed in an amount of no less than $C147.31 million on account of outstanding loans under the 2007 Loan Agreement.

(c) *Treatment:* Each holder of 2007 Loan Agreement Claims shall receive, on the Distribution Date, in full and final satisfaction of the 2007 Loan Agreement Claims, its Pro Rata share of the Junior Creditor Rights.

(d) *Voting:* Holders of 2007 Loan Agreement Claims are Impaired. Each holder of a 2007 Loan Agreement Claim is entitled to vote to accept or reject the Plan.

### 4.6 Class 6 (Interests in TRC).

(a) *Classification:* Class 6 consists of Interests in TRC.

(b) *Treatment:* Holders of Interests in Class 6 shall receive no property under the Plan and such Interests shall be cancelled as of the Effective Date.

(c) *Voting:* Holders of Interests in TRC are Impaired. Holders of Interests in TRC are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan.

**4.7**      **Class 7 (Affiliated Debtor Interests).**

     **(a)**      *Classification:* Class 7 consists of Interests in the Affiliated Debtors.

     **(b)**      *Treatment*: On the Effective Date, the Affiliated Debtor Interests shall remain effective and outstanding and, except as otherwise expressly provided in this Plan, be owned and held by the same applicable Person(s) that held and/or owned such Affiliated Debtor Interests immediately prior to the Effective Date.

     **(c)**      *Voting*: Class 7 is Unimpaired, and the holders of Affiliated Debtor Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Affiliated Debtor Interests are not entitled to vote to accept or reject the Plan.

**4.8**      **Class 8 (Intercompany Claims).**

     **(a)**      *Classification:* Class 8 consists of all Intercompany Claims.

     **(b)**      *Treatment:* On the Effective Date, each Allowed Intercompany Claim shall be Reinstated except as otherwise agreed to by the Debtors, with the consent of the Required Backstop Parties. After the Effective Date, the Reorganized Debtors shall have the right to resolve or compromise Allowed Intercompany Claims without approval of the Bankruptcy Court.

     **(c)**      *Voting:* Class 8 is Unimpaired, and the holders of Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN

**5.1**      **Impaired Classes of Claims Entitled to Vote.**

Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on the Plan and Article 5.4 of the Plan, holders of Claims in each Impaired Class are entitled to vote in their respective classes as a class to accept or reject the Plan.

**5.2**      **Classes Deemed to Accept the Plan.**

Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 7 (Affiliated Debtor Interests), and Class 8 (Intercompany Claims) are Unimpaired under the Plan. Therefore, such Classes are conclusively presumed to have accepted the Plan. The votes of holders of Claims and Interests in such Classes shall not be solicited.

**5.3**      **Acceptance by Impaired Classes.**

Classes 4 and 5 are Impaired and entitled to vote under the Plan. Pursuant to section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar

amount and more than one-half in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 5.4 Classes Deemed to Reject the Plan.

Classes 3 and 6 will not receive or retain any property under the Plan on account of their Claims or Interests. Pursuant to section 1126(g) of the Bankruptcy Code, these classes will be conclusively presumed to have rejected the Plan.

### 5.5 Confirmation without Acceptance by All Impaired Classes.

The Debtors request Confirmation under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that has not accepted or is deemed not to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code. If any Class of Impaired Claims votes to reject the Plan, the Debtors' ability to confirm the Plan with respect to such rejecting Class pursuant to the cramdown standards of section 1129(b) of the Bankruptcy Code shall be determined as if the Debtors have not been treated as if consolidated for voting, distribution or confirmation purposes, with all Claims (including Intercompany Claims) against each Debtor and all Interests in each Debtor treated as separate and distinct Claims or Interests against or in such Debtor, as applicable (in each case, entitled to a separate recovery with respect to each such Debtor, as applicable) but not as Claims against any other Debtor not otherwise liable on account of such Claims or as Interests in any other Debtor, as applicable.

### ARTICLE VI

### MEANS FOR IMPLEMENTATION OF THE PLAN

### 6.1 Continued Corporate Existence.

Subject to any Restructuring Transaction, each of the Debtors shall continue to exist after the Effective Date as a separate entity, with all the powers of a corporation, limited liability company, or partnership, as the case may be, under applicable law in the jurisdiction in which each applicable Debtor is incorporated or otherwise formed and pursuant to its certificate of incorporation and bylaws or other organizational documents in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws or other organizational documents are amended and restated or reorganized by the Plan or the Canadian Plan, as applicable, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date. There are certain Affiliates of the Debtors that are not Debtors in these Chapter 11 Cases. The continued existence, operation, and ownership of such non-Debtor Affiliates is a component of the Debtors' businesses, and, unless otherwise provided herein, all of the Debtors' equity interests and other property interests in such non-Debtor Affiliates shall revest in the applicable Reorganized Debtor or its successor on the Effective Date.

### 6.2 Limited Consolidation for Voting, Confirmation and Distribution Purposes.

(a) Pursuant to the Confirmation Order, and subject to the provisions of Article 5.5 of the Plan, the Bankruptcy Court shall approve the Debtors' election to treat the Estates as if they were consolidated solely for the purpose of voting, confirmation and distributions to be made under the Plan and under the Canadian Plan. Accordingly, for purposes of implementing the Plan, pursuant to such order: (1) all assets and liabilities of the Debtors shall be treated as if they are pooled; and (2) with respect to any guarantees by one Debtor of the obligations of any other Debtor, and with respect to any

joint or several liability of any Debtor with any other Debtor, the holder of any Claims for such obligations will receive a single recovery on account of any such joint obligations of the Debtors.

(b)     Such election to treat the Estates as if they were consolidated solely for the purpose of implementing the Plan shall not affect: (1) the legal and corporate structures of the Debtors, subject to the right of the Debtors to effect the Restructuring Transactions contemplated pursuant to the Plan; (2) pre- and post-Effective Date guarantees, liens and security interests that are required to be maintained (a) in connection with contracts or leases that were entered into during the Chapter 11 Cases or executory contracts and unexpired leases that have been or will be assumed or (b) pursuant to the Plan; (3) Interests between and among the Debtors; (4) distributions from any insurance policies or proceeds of such policies; (5) preservation of the separate Estates for purposes of confirmation to the extent provided in Article 5.5 of the Plan and (6) the revesting of assets in the separate Reorganized Debtors pursuant to Article 11.1 of the Plan. In addition, such election to treat the Estates as consolidated for the purpose of implementing the Plan will not constitute a waiver of the mutuality requirement for setoff under section 553 of the Bankruptcy Code, except to the extent otherwise expressly waived by the Debtors.

(c)     The Plan serves as a motion seeking entry of an order allowing the Debtors to treat the Estates as if consolidated solely for purposes of voting, confirmation and distributions under the Plan, and to that end, pooling the assets and liabilities of the Debtors solely for the purposes of implementing the Plan, as described and to the limited extent set forth in Article 6.2(a) and (b) of the Plan. Unless an objection to such election is made in writing by any creditor affected by the Plan, filed with the Bankruptcy Court and served on the parties listed in Article 14.10 of the Plan on or before five days before either the Voting Deadline or such other date as may be fixed by the Bankruptcy Court, such order (which may be the Confirmation Order) may be entered by the Bankruptcy Court. In the event any such objections are timely filed, a hearing with respect thereto will occur at or before the Confirmation Hearing. Notwithstanding anything to the contrary in the Plan, nothing therein shall affect the obligation of each and every Debtor to pay quarterly fees to the Office of the United States Trustee in accordance with 28 U.S.C. §1930.

(d)     In the event that the Bankruptcy Court does not approve the Debtors' election to treat the Estates as if they are consolidated solely for voting, confirmation and distribution purposes, (a) the Plan shall be treated as a separate plan of reorganization for each Debtor, and (b) the Debtors shall not be required to re-solicit votes with respect to the Plan.

### 6.3     Restructuring Transactions.

On or following the Confirmation Date, the Debtors or the Reorganized Debtors, as the case may be, shall take such actions as may be necessary or appropriate to effect the Restructuring Transactions. Such actions may include, without limitation: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law (and, in all events, that are satisfactory to the Required Backstop Parties); (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, guaranty, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan and acceptable to the Required Backstop Parties; (c) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities under applicable law which, in all events, are acceptable to the Required Backstop Parties; and (d) all other actions that such Debtors, with the consent of the Required Backstop Parties which shall not be unreasonably withheld, or the Reorganized Debtors, determine are necessary or appropriate, including, without limitation, the making of appropriate filings and/or recordings in respect of the Restructuring Transactions, including without limitation, with respect to the Rights Offering. The form of each Restructuring Transaction shall be determined by the boards of directors of the Debtors

(with the consent of the Required Backstop Parties, which consent shall not be unreasonably withheld) or the Reorganized Debtors. In the event a Restructuring Transaction is a merger transaction, upon the consummation of such Restructuring Transaction, each party to such merger shall cease to exist as a separate corporate entity and thereafter the surviving Reorganized Debtor or affiliate of any of the Debtors organized as part of the Restructuring Transactions shall assume and perform the obligations of each merged Debtor under the Plan. In the event a Reorganized Debtor is liquidated, the Reorganized Debtor(s) which owned the equity interests of such liquidating Debtor prior to such liquidation shall assume and perform the obligations of such liquidating Debtor. Implementation of the Restructuring Transactions shall not affect the distributions under the Plan. On the Effective Date, the Reorganized Debtors shall be authorized to execute and deliver the Exit Facility Agreement, as well as execute, deliver, file, record and issue any notes, guarantees, documents (including, Uniform Commercial Code financing statements) or agreements in connection therewith, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation or rule or the vote, consent, authorization or approval of any Person.

### 6.4    Corporate Governance.

#### (a)    New Certificate of Incorporation and New Bylaws.

On or immediately before the Effective Date, the Reorganized Debtors will file their respective New Certificates of Incorporation with the applicable secretaries of state and/or other applicable authorities in their respective states of incorporation in accordance with the corporate laws in the respective states of incorporation. The New Certificates of Incorporation and New Bylaws shall amend or succeed the certificates or articles of incorporation, by-laws, membership agreements, partnership agreements and/or other organizational documents of the Debtors to satisfy the provisions of this Plan and the Bankruptcy Code, and shall (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; (ii) authorize the issuance of New Common Stock in a amount not less than the amount necessary to permit the distributions thereof required or contemplated by this Plan; (iii) to the extent necessary or appropriate, include restrictions on the transfer of New Common Stock; and (iv) to the extent necessary to appropriate, include such provisions as may be needed to effectuate and consummate this Plan and the transactions contemplated herein. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Certificates of Incorporation and New Bylaws and other constituent documents as permitted by the laws of their respective states of incorporation and their respective New Certificates of Incorporation and New Bylaws.

#### (b)    New Shareholders' Agreement.

Upon the Effective Date and as a condition to receiving their shares of New Common Stock, all holders of New Common Stock shall enter into the New Shareholders' Agreement. Prior to any subsequent initial public offering of the New Common Stock, future shareholders of TRC, including holders of shares to be issued pursuant to the Management Equity Issuance and / or Contingent Value Rights (on or after the Effective Date), shall be required to execute a joinder to the Shareholders' Agreement.

### 6.5    Directors and Officers.

The initial directors and officers shall be designated in the Plan Supplement. The New Board shall consist of 9 members. One of the directors shall be the Chief Executive Officer of TRC. Jennison Associates LLC shall appoint two (2) directors. The remaining six (6) directors shall be appointed by

agreement of the 2006 Backstop Parties providing at least 80% of the Equity Put Commitment in respect of the Senior Creditor Rights. The existing board of directors of TRC shall be deemed to have resigned on and as of the Effective Date, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.

### 6.6    Long-Term Incentive Plan.

The compensation committee of the New Board shall approve a new long-term incentive plan. Notwithstanding anything to the contrary herein, obligations of the Debtors under the long-term incentive plan (the "LTIP") in effect prior to the commencement of the Chapter 11 Cases shall be paid in full, in cash, in installments over a three-year period as currently set forth in the LTIP as if the LTIP had been assumed, and all LTIP beneficiaries shall waive any claims arising out of or relating to any "change of control", termination, or any other provision that could or would otherwise entitle such director to be paid a greater amount or on a different time frame.

### 6.7    The Rights Offering.

#### (a)    General Description.

Pursuant to the Rights Offering, TRC will offer and sell, for an aggregate purchase price of $200 million, 60% of the New Common Stock to the Eligible 2006 Holders and the Eligible 2007 Holders. Each Eligible 2006 Holder shall be offered the right to purchase up to its Pro Rata share of $150 million of New Common Stock (the "Senior Creditor Rights") and each Eligible 2007 Holder will be offered the right to purchase up to its Pro Rata share of $50 million of New Common Stock (the "Junior Creditor Rights"). New Common Stock issued pursuant to the Rights Offering shall be subject to the New Shareholders' Agreement.

#### (b)    Rights Offering Procedures.

Eligible 2006 Holders and Eligible 2007 Holders will be entitled to exercise the Senior Creditor Rights and Junior Creditor Rights, respectively in order to subscribe for and acquire their Pro Rata share of 60% of the New Common Stock (calculated prior to giving effect to dilution resulting from the Management Equity Issuance and the Contingent Value Rights) being offered pursuant to the Rights Offering, subject to the Commitment Letter and in accordance with the terms of the Rights Offering Procedures.

#### (c)    The Equity Put Commitment.

In order to facilitate the Rights Offering and implementation of the Plan, the Backstop Parties have agreed to acquire any Unsubscribed Shares in accordance with and subject to the terms and conditions of the Commitment Letter and as more fully described in the Disclosure Statement. On the Effective Date, pursuant to the Commitment Letter, and as approved by the Approval Order, (i) the Company will reimburse or pay the documented and reasonable fees, costs and expenses of the Backstop Parties, the Backstop Party Professionals and the Prepetition Agents relating to the Equity Put Commitment and the Restructuring Transactions (the "Expense Reimbursement"), and (ii) the Backstop Parties will receive the Equity Put Fee and be entitled to the Backstop Indemnification Obligations, each as more fully described in the Commitment Letter and Disclosure Statement.

### (d) Contingent Value Rights.

On the Effective Date, in consideration for its Equity Put Commitment, each 2007 Backstop Party or its designee that is a holder of 2007 Loan Agreement Claims shall receive its percentage of the Contingent Value Rights as set forth in the Commitment Letter.

### 6.8 Issuance of New Common Stock.

The issuance of New Common Stock, including the shares of the New Common Stock reserved for the Management Equity Issuance, is authorized without the need for any further corporate action or without any further action by a Holder of Claims of Interests.

### 6.9 Issuance and Distribution of New Common Stock.

The New Common Stock, when issued and distributed as provided in the Plan, will be duly authorized, validly issued, and not subject to any preemptive rights. In addition, the New Common Stock will be issued as fully paid and non-assessable shares. Each distribution and issuance under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each person or entity receiving such distribution or issuance.

### 6.10 Use of Proceeds from Rights Offering; Treatment of Second Lien Credit Agreement Obligations.

On the Effective Date, the proceeds of the Rights Offering shall be used for general corporate purposes and/or shall be loaned or contributed to TEC and used by TEC to pay a portion of the Second Lien Credit Agreement Obligations. The remaining Second Lien Credit Agreement Obligations shall be paid in full from the proceeds of the exit financing being arranged by TEC.

### 6.11 Registration Rights Agreement.

Upon the Effective Date, Reorganized TRC and certain significant holders of New Common Stock shall enter into the Registration Rights Agreement, providing such holders with the right to have Reorganized TRC register their shares of New Common Stock with the Securities and Exchange Commission (the "SEC") under certain circumstances.

### 6.12 Exemptions for Issuance of New Common Stock.

Pursuant to section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, all issuance of the 2006 New Common Stock pursuant to Article 4.4(c) of the Plan will be exempt from registration under the Securities Act and all rules and regulations promulgated thereunder. The New Common Stock and the Contingent Value Rights issued pursuant to the Rights Offering and Management Equity Incentive Plan will be issued pursuant to section 4(2) of the Securities Act or another exemption from registration under the Securities Act.

### 6.13 Cancellation of Securities and Agreements.

On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors and non-Debtor Affiliates (which includes their respective obligations under the Guarantees) under the 2006 Credit Agreement, 2007 Loan Agreement, and any other Certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or

indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors, if any, that are specifically and expressly reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, Certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors, if any, that are specifically and expressly reinstated pursuant to the Plan) shall be released and discharged; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing (a) Holders of 2006 Credit Agreement Claims, 2007 Loan Agreement Claims or their respective Prepetition Agents to receive distributions under the Plan as provided herein; (b) the Prepetition Agents to make distributions, or to assist in the making of distributions by the Disbursing Agent, under the Plan as provided herein; (c) the Prepetition Agents to exercise their charging liens against any such distributions; and (d) the Prepetition Agents to seek compensation and/or reimbursement of fees and expenses in accordance with the terms of this Plan. Any reasonable fees and expenses of the Prepetition Agents remaining unpaid on the Effective Date shall be paid in full in cash on the Effective Date, or within ten (10) days after receipt by the Reorganized Debtors of invoices therefor; provided, however, any disputes over the reasonableness of such fees and expenses shall be determined by the Bankruptcy Court. On and after the Effective Date, all duties and responsibilities of the Prepetition Agents shall be discharged unless otherwise specifically set forth in or provided for under this Plan.

### 6.14    Preservation of Causes of Action.

In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in the Plan, the Debtors or Reorganized Debtors shall retain and may (but are not required to) enforce all Retained Actions and all other similar claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code. The Reorganized Debtors, as applicable, in their sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce any such Retained Actions (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action. The Debtors (with the consent of the Required Backstop Parties, which consent shall not be unreasonably withheld) or the Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action.

### 6.15    Management Equity Incentive Plan.

The Management Equity Incentive Plan shall be established and adopted by the New Board and shall consist of the Management Equity Issuance. The terms of the Management Equity Incentive Plan shall be set forth in the Plan Supplement and subject to the approval of the New Board.

### 6.16    Exclusivity Period.

The Debtors, with the consent of the Required Backstop Parties, shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

### 6.17 Corporate Action.

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) the Restructuring Transactions; (ii) the adoption of the New Certifications of Incorporation and New Bylaws (or comparable organizational documents) for the Reorganized Debtors; (iii) the initial selection of directors and officers for the Reorganized Debtors; (iv) the issuance of the New Common Stock; (v) the distribution of the New Common Stock, the Contingent Value Rights, the Senior Creditor Rights, the Junior Creditor Rights and Cash pursuant to the Plan; (vi) the execution and entry into the Exit Facility Agreement; and (vii) all other actions contemplated in the Plan (whether to occur before, on, or after the Effective Date). All matters provided for under the Plan involving the corporate structure of the Debtors and Reorganized Debtors or corporate action to be taken by or required of a Debtor or Reorganized Debtor will be deemed to occur and be effective as of the Effective Date, if no such other date is specified in such other documents, and shall be authorized, approved, adopted and, to the extent taken prior to the Effective Date, ratified and confirmed in all respects and for all purposes without any requirement of further action by holders of Claims or Interests, directors of the Debtors or the Reorganized Debtors, as applicable, or any other Person.

### 6.18 Effectuating Documents; Further Transactions.

On and after the Effective Date, the Reorganized Debtors and the managers, officers and members of the boards of directors thereof, are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law, without the need for any approvals, authorization or consents except for those expressly required pursuant to the Plan.

### 6.19 Exemption from Certain Transfer Taxes and Recording Fees.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer from a Debtor to a Reorganized Debtor or any other Person or entity pursuant to the Plan or the Canadian Plan (including, for this purpose, in connection with the Restructuring Transactions), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### ARTICLE VII

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.1 General Treatment.

Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement or document entered in connection with the Plan, as of the Effective Date, all executory contracts and unexpired leases (if any) to which any of the Debtors are parties are hereby assumed except for an executory contract or unexpired lease that (i) previously has been assumed or rejected prior to the Effective Date, (ii) previously expired or terminated by its own terms, (iii) is specifically designated as a contract or lease to be rejected on the schedule of rejected contracts scheduled in the Plan Supplement, or (iv) is the subject of a separate motion to assume or reject such executory

contract or unexpired lease filed by the Debtors under section 365 of the Bankruptcy Code prior to the Confirmation Date. For the avoidance of doubt, the schedules of rejected and assumed contracts identified on the Plan Supplement must be acceptable to the Required Backstop Parties. The Confirmation Order shall operate as an order authorizing the Debtors' assumption of all assumed executory contracts and unexpired leases.

### 7.2 Cure of Defaults.

Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Article 7.1 hereof, within thirty (30) days after the Confirmation Date, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, file and serve a pleading with the Bankruptcy Court listing the cure amounts of all executory contracts or unexpired leases to be assumed. The parties to such executory contracts or unexpired leases to be assumed by the Debtors shall have fifteen (15) days from service to object to the cure amounts listed by the Debtors or the ability of the Reorganized Debtors or any assignee to provide adequate assurance of future performance. Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed assumption will be deemed to have assented and will be deemed to have forever released and waived any objection to the proposed assumption. If there are any objections filed, the Bankruptcy Court shall hold a hearing. The Debtors or the Reorganized Debtors shall retain their right to reject any of their executory contracts or unexpired leases, including contracts or leases that are subject to a dispute concerning amounts necessary to cure any defaults. In the event of a dispute regarding (a) the amount of any payments to cure a default, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

### 7.3 Rejection Claims.

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served on counsel for the Debtors and the Reorganized Debtors on or before the date that is thirty (30) days after the Confirmation Date or such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults. Rejection Claims will be treated as General Unsecured Claims under the Plan.

### 7.4 Assignment.

In the event of an assignment of an executory contract or unexpired lease, absent further order of the Bankruptcy Court, at least twenty (20) days prior to the Confirmation Hearing, the Debtors shall serve upon counterparties to such executory contracts and unexpired leases, a notice of the proposed assumption and assignment, which will: (a) list the applicable cure amounts, if any; (b) identify the party to which each applicable executory contract or unexpired lease will be assigned; (c) describe procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court; additionally, the Debtors shall file with the Bankruptcy Court a list of such executory contracts and unexpired leases to be assigned and the proposed cure amounts. Any applicable cure amounts shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure

amount in Cash on the Effective Date or such other terms as the parties to such executory contracts or unexpired leases may otherwise agree.

Absent further order of the Bankruptcy Court, any objection by a counterparty to an executory contract or unexpired lease to a proposed assignment or any related cure amount must be filed, served, and actually received by the Debtors at least five (5) days prior to the Confirmation Hearing. Any counterparty to an executory contract and unexpired lease that fails to object timely to the proposed assignment or cure amount will be deemed to have consented to such assignment of its executory contract or unexpired lease. The Confirmation Order shall constitute an order of the Bankruptcy Court approving any proposed assignments of executory contracts of unexpired leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in sections 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assigned, or (c) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assignment. If an objection to assignment or cure amount is sustained by the Bankruptcy Court, the Reorganized Debtors in their sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming and assigning it.

On and after the Effective Date, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors and the Reorganized Debtors may transfer and assign any of their executory contracts or unexpired leases that have not been rejected without any further act, authority, or notice, subject to the consent of the Required Backstop Parties. Any executory contract or unexpired lease so transferred and assigned shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in sections 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. Any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition on any such transfer and assignment constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

### 7.5    Mineral Leases.

To the extent any of the Reorganized Debtors' Mineral Leases constitute executory contracts or unexpired leases of real property under section 365 of the Bankruptcy Code, such Mineral Leases will be assumed by the Reorganized Debtors. To the extent any of the Reorganized Debtors' Mineral Leases constitute contracts or other property rights not assumable under section 365 of the Bankruptcy Code, except as provided in the Plan or Confirmation Order, such Mineral Leases shall pass through the Chapter 11 Cases for the benefit of the Reorganized Debtors and the counterparties to such Mineral Leases.

If there is a dispute as to any cure obligation (including cure payments) between the applicable Reorganized Debtor and the lessor of a Mineral Lease, the applicable Reorganized Debtor shall only have to pay or perform the non-disputed cure obligation with the balance of the cure payment or cure performance to be made or performed after resolution of such dispute either by (i) agreement of the

parties or (ii) resolution by the Bankruptcy Court under a Final Order.

### 7.6 Survival of Indemnification Provisions.

The Indemnification Provisions and the Backstop Indemnification Obligations shall not be discharged or impaired by confirmation of the Plan and such obligations shall be deemed and treated as executory contracts assumed by the Debtors hereunder and shall continue as obligations of the Reorganized Debtors.

### 7.7 Survival of Other Employment Arrangements.

On and after the Effective Date, and except as otherwise provided in the Plan, the Reorganized Debtors may but shall not be required to: (1) honor, in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in each case to the extent disclosed in the Disclosure Statement or the first day pleadings, for, among other things, compensation, health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the managers, officers, and employees of any of the Debtors who served in such capacity at any time and (2) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Commencement Date; provided, however, that the Debtors' or the Reorganized Debtors performance of any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan; provided further, however, that the Debtors, with the consent of the Required Backstop Parties, will designate as part of the Plan Supplement those employment agreements with other members of existing senior management and/or other employees that shall be assumed as of the Effective Date, which list shall include the existing employment agreements with its Chief Executive Officer and Chief Financial Officer, respectively

Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, causes of action, or other rights with respect to any such contracts, agreements, policies, programs, and plans. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

### 7.8 Insurance Policies.

All insurance policies identified in the Data Room as of the Confirmation Hearing pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the respective Debtors and Reorganized Debtors and shall continue in full force and effect.

TRC has obtained, or, will obtain consistent with the terms of the Term Sheet, reasonably sufficient tail coverage under a directors and officers' liability insurance policy for the current and former directors and officers of the Debtors. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnification obligations assumed by the foregoing assumption of any director and officer liability insurance policies, and each such indemnity obligation shall be deemed and treated as an executory contract that has been assumed by the Debtors under the Plan as to which no proof of claim need be filed.

**7.9      Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

**8.1      Record Date for Distributions.**

As of the Confirmation Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or Interests occurring on or after the Distribution Record Date.

**8.2      Timing and Calculation of Amounts to Be Distributed.**

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in ARTICLE IX hereof.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**8.3      Disbursing Agent.**

Except as otherwise provided herein, all distributions under the Plan shall be made by the Reorganized Debtors as Disbursing Agent or such other Entity designated by the Reorganized Debtors to assist the Disbursing Agent on the Effective Date.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  In the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

**8.4      Rights and Powers of Disbursing Agent.**

**(a)      Powers of the Disbursing Agent.**

The Reorganized Debtors as Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

## (b)    Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent, or such other Entity designated by the Reorganized Debtors to assist the Disbursing Agent, on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

## 8.5    Distributions on Account of Claims Allowed After the Effective Date.

### (a)    Payments and Distributions on Disputed Claims.

Notwithstanding any other provision of the Plan, no distributions shall be made under the Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim. Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### (b)    Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors or the Reorganized Debtors, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

## 8.6    Delivery of Distributions and Undeliverable or Unclaimed Distributions.

### (a)    Delivery of Distributions in General.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Reorganized Debtors or the applicable Disbursing Agent, as appropriate: (a) to the signatory set forth on any of the Proofs of Claim filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no proof of claim is filed or if the Debtors have been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or the applicable Disbursing Agent, as appropriate, after the date of any related proof of claim; (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Reorganized Debtors or the applicable Disbursing Agent, as appropriate, has not received a written notice of a change of address; or (d) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Reorganized Debtors, the Backstop Parties, the Prepetition Agents and the applicable Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

Except as otherwise provided in the Plan, all distributions to Holders of 2006 Credit Agreement Claims and 2007 Loan Agreement Claims shall be governed by the 2006 Credit Agreement and the 2007 Loan Agreement, respectively, and shall be deemed completed when made to the Prepetition Agents, who shall in turn make distributions in accordance with the 2006 and 2007 Loan Agreements, for

further distribution to the Holders of 2006 Credit Agreement Claims and 2007 Loan Agreement Claims, but subject to the charging liens of the Prepetition Agents.

### (b) Fractional Securities.

Payments of fractions of shares of New Common Stock shall not be made. Fractional shares of New Common Stock that would otherwise be distributed under the Plan shall be rounded to the nearest whole number, with any fractional shares of .50 or less being rounded down.

### (c) Undeliverable Distributions and Unclaimed Property.

If any distribution to a holder of a Claim is returned as undeliverable, no further distributions to such holder of such Claim shall be made unless and until the Disbursing Agent is notified of the then-current address of such holder of the Claim, at which time all missed distributions shall be made to such holder of the Claim without interest. Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtors until such distributions are claimed. The Reorganized Debtors shall make reasonable efforts to locate holders of undeliverable distributions. Such undeliverable distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the Effective Date. After such date, all "unclaimed property" or interests in property shall revert to the Reorganized Debtors (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

### 8.7 Withholding and Reporting Requirements.

In connection with the Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### 8.8 Setoffs.

Without altering or limiting any of the rights and remedies of the Debtors and the Reorganized Debtors under section 502(d) of the Bankruptcy Code, all of which rights and remedies are hereby reserved, the Debtors and the Reorganized Debtors may withhold (but not set off except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim. In the event that any such claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, equity interests, rights, and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically provided herein.

### 8.9 Claims Paid or Payable by Third Parties.

#### (a) Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

#### (b) Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

#### (c) Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

### 8.10 No Interest on Disputed Claims.

Unless otherwise specifically provided for in the Plan or as otherwise required by sections 506(b), 511 or 1129(a)(9)(C)-(D) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

### 8.11 Postpetition Interest on Claims.

Except as expressly provided in the Plan, the Confirmation Order or any contract, instrument, release, settlement or other agreement entered into in connection with the Plan, or as required by applicable bankruptcy law, including sections 511 and 1129(a)(9)(C)-(D) of the Bankruptcy Code, postpetition interest shall not be treated as accruing on account of any Claim for purposes of determining the allowance of, and distribution on account of, such Claim.

**8.12    Allocation of Plan Distributions Between Principal and Interest.**

To the extent that any Allowed Claim to which a distribution under this Plan relates is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for all purposes (including for United States and Canadian federal income tax purposes) to the principal amount of the Claim (including the secured and unsecured portion of the principal amount of such Claim) first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest (including interest in respect of any secured portion of such Claim). For the avoidance of doubt, this Article 8.12 shall not apply to any claims that are not indebtedness, including, without limitation, any Priority Tax Claims or Administrative Claims pursuant to section 503(b)(1)(B) and (C) of the Bankruptcy Code.

## ARTICLE IX

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

**9.1    Objections to Claims.**

The Debtors or the Reorganized Debtors shall be entitled to object to Claims. Any objections to Claims shall be served and filed on or before the later of (i) one hundred twenty (120) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the holder of the Claim if the Debtors or Reorganized Debtors effect service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for a holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified on the proof of claim or any attachment thereto (or at the last known addresses of such holders of Claims if no proof of claim is filed or if the Debtors have been notified in writing of a change of address); or (iii) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the holder of the Claim in the Chapter 11 Cases and has not withdrawn such appearance.

**9.2    No Distributions Pending Allowance.**

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**9.3    Estimation of Claims.**

The Debtors or the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum

limitation on the amount of such Claim, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 9.4 Distributions Relating to Disputed Claims.

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the holder of such Claim, such holder's pro rata portion of the property distributable with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated pro rata to the holders of Allowed Claims in the same class.

### 9.5 Disallowed Claims.

All Claims held by Persons or entities against whom or which any Debtor or Reorganized Debtor has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed not Allowed Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Reorganized Debtors from such party have been paid.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER ON OR BEFORE THE LATER OF (1) THE CONFIRMATION HEARING AND (2) 45 DAYS AFTER THE APPLICABLE CLAIMS BAR DATE.**

### ARTICLE X

### ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

### 10.1 Professional Claims.

Professionals or other entities asserting a Professional Claim for services rendered before the Effective Date must file and serve on the Reorganized Debtors and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court an application for final allowance of such Professional Claim no later than the Professional Fees Bar Date; provided that, the Reorganized Debtors shall pay Professionals in the ordinary course of business for any work performed after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and consummation of this Plan, in each case without further application or notice to or order of the Bankruptcy Court; provided further, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course

Professionals Order. Objections to any Professional Claim must be filed and served on the Reorganized Debtors and the requesting party by the later of (a) 50 days after the Effective Date and (b) 20 days after the filing of the applicable request for payment of the Professional Claim. Each Holder of an Allowed Professional Claim shall be paid by the Reorganized Debtors in Cash within five Business Days of entry of the order approving such allowed Professional Claim.

### 10.2    Professional Fee Escrow Account.

In accordance with Article 10.3, on the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Professionals. The Professional Fee Escrow Account shall be maintained in trust for the Professionals with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order. Such funds shall not be considered property of the Reorganized Debtors. The remaining amount of Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account when such claims are Allowed by a Bankruptcy Court order. When all Claims of Professionals have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be paid to the Reorganized Debtors.

### 10.3    Professional Fee Reserve Amount.

To receive payment for unbilled fees and expenses incurred through the Effective Date, on or before the Effective Date, the Professionals shall estimate their Accrued Professional Compensation prior to and as of the Effective Date and shall deliver such estimate to the Debtors. If a Professional does not provide an estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Professional; provided, however, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional. The total amount so estimated as of the Effective Date shall comprise the Professional Fee Reserve Amount.

### 10.4    Post-Confirmation Date Retention.

Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors shall employ and pay professionals in the ordinary course of business. For the avoidance of doubt, after the Confirmation Date, Professionals will no longer be required to file fee applications and the Professional Fee Order will no longer be in effect; provided, however, for any fees and expenses incurred prior to the Confirmation Date, Professionals will be required to file a fee application and comply with the Professional Fee Order in all respects.

### 10.5    Bar Date for Other Administrative Claims.

Except as otherwise provided herein, unless otherwise previously filed, requests for payment of Administrative Claims (other than claims in respect of the Equity Put Fee, the Expense Reimbursement, the Backstop Indemnification Obligations or any other fee or expense payable by the Debtors or the Reorganized Debtors under the Commitment Letter) must be filed and served on the Reorganized Debtors by no later than the Administrative Claims Bar Date. Holders of such Administrative Claims that are required to file and serve a request for payment of such Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their Estates and such Administrative Claims shall be deemed discharged as of the Effective Date. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article 11.8 hereof. Objections to such requests must be filed and served on the Reorganized

Debtors and the requesting party by the later of (a) sixty (60) days after the Effective Date and (b) thirty (30) days after the filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by the Bankruptcy Court and/or on motion of a party in interest approved by the Bankruptcy Court.

## ARTICLE XI

## EFFECT OF PLAN CONFIRMATION

### 11.1    Revesting of Assets.

Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estates, subject to the Restructuring Transactions, shall revest in each of the Reorganized Debtors which owned such property or interest in property as of the Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights, and interests of creditors and equity security holders.  As of and following the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

### 11.2    Discharge of the Debtors.

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action (whether known or unknown) against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of the Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program which occurred prior to the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, right, or Interest accepted the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the occurrence of the Effective Date.

In addition, each Holder of a 2006 Credit Agreement Claim and a 2007 Loan Agreement Claim shall be deemed to have forever waived, released, and discharged the non-Debtor Affiliates of any liens, Claims, claims, causes of action, rights, or liabilities arising from the Guarantees granted to the Holders of the 2006 Credit Agreement Claims and 2007 Loan Agreement Claims or their respective Agents as well as any deficiency claims.  In addition, the Confirmation Order shall authorize and direct the Agents to take whatever action may be necessary or appropriate, in its reasonable discretion, to effectuate the foregoing, including, without limitation, providing a release of such guarantee liabilities and any such liens.

### 11.3 Compromises and Settlements.

In accordance with and subject to ARTICLE IX of the Plan, pursuant to Bankruptcy Rule 9019(a), with the consent of the Required Backstop Parties, the Debtors may compromise and settle various (a) Claims against, or Interests in, the Debtors and (b) Causes of Action that the Debtors have against other Persons up to and including the Effective Date. After the Effective Date, any such right shall pass to the Reorganized Debtors as contemplated in Article 11.1 of the Plan, without the need for further approval of the Bankruptcy Court.

### 11.4 Release by the Debtors of Certain Parties.

Pursuant to section 1123(b)(3) of the Bankruptcy Code, effective as of the Effective Date, each Debtor, in its individual capacity and as a debtor in possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan or the Canadian Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases or the Canadian Proceedings, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring, or the Chapter 11 Cases or the Canadian Proceedings, including, but not limited to, any claim relating to, or arising out of the Chapter 11 Cases or the Canadian Proceedings, the negotiation and filing of the Plan or the Canadian Plan, the filing of the Chapter 11 Cases or the Canadian Proceedings, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of the Plan or the Canadian Plan, the Disclosure Statement, any document filed by the Debtors in respect of the Canadian Plan, Exhibits, any document filed by the Debtors in respect of the Canadian Plan, the Plan Supplement, any employee benefit plan, instrument, release, or other agreement or document created, modified, amended or entered into in connection with the Plan or the Canadian Plan. The Reorganized Debtors and any newly-formed entities that will be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the releases and discharges set forth above.

### 11.5 Release by the Holders of Claims and Interests.

On the Effective Date, each Person who votes to accept the Plan in its capacity as the holder of any Claim or Interest and, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity (other than a Debtor), which has held, holds, or may hold a Claim against or Interest in the Debtors in its capacity as the holder of any Claim or Interest, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and Cash, New Common Stock, and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan or the Canadian Plan (each, a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Reorganized Debtors, the Debtors and all Released Parties for and from any claim or Cause of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, any or all of the Debtors, the subject matter of, or the transaction or event giving rise to, the claim of such Release Obligor, the business or contractual arrangements between or among any Debtor and Release Obligor or any Released Party, the restructuring of the claim prior to or in the Chapter 11 Cases or the Canadian Proceedings, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction, obligation, restructuring or the Chapter 11 Cases or the Canadian

Proceedings, including, but not limited to, any claim relating to, or arising out of the Debtors' Chapter 11 Cases or the Canadian Proceedings, the negotiation and filing of the Plan or the Canadian Plan, the filing of the Chapter 11 Cases or the Canadian Proceedings, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of the Plan or the Canadian Plan, the Disclosure Statement, any document filed by the Debtors in respect of the Canadian Plan, the Exhibits, the Plan Supplement, any employee benefit plan, instrument, release, or other agreement or document created, modified, amended or entered into in connection with the Plan or the Canadian Plan.

**11.6    Setoffs.**

Except as otherwise provided in the Plan, the Debtors may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have against such holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such holder of such Claim.

**11.7    Exculpation.**

Except as otherwise specifically provided in the Plan, the Plan Supplement or related documents, the Debtors, the Reorganized Debtors and the Released Parties shall neither have, nor incur any liability to any entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to, or arising out of the Chapter 11 Cases, the negotiation and filing of the Plan, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation or consummation of the Plan, the Disclosure Statement, the Exhibits, the Plan Supplement documents, any employee benefit plan, instrument, release or other agreement or document created, modified, amended or entered into in connection with the Plan, except for their willful misconduct or gross negligence and except with respect to obligations arising under confidentiality agreements, joint interest agreements, and protective orders, if any, entered during the Chapter 11 Cases; provided, however, each Released Party shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the above referenced documents, actions, or inactions.

**11.8    Injunction.**

The satisfaction, release, and discharge pursuant to this ARTICLE XI shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

**ARTICLE XII**

**CONFIRMATION OF THE PLAN**

**12.1    Conditions to Confirmation.**

It shall be a condition to confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article 12.3 hereof:

**(a)** The Bankruptcy Court shall have entered an order by May 14, 2010 in form and substance satisfactory to the Required Backstop Parties, approving the Disclosure Statement with respect to this Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

**(b)** The Plan, the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in form and substance acceptable to the Required Backstop Parties, without prejudice to the Reorganized Debtors' rights under the Plan to alter, amend, or modify certain of the schedules, documents, and exhibits contained in the Plan Supplement consistent with Article 14.5 of this Plan.

**(c)** The proposed Confirmation Order shall be in form and substance acceptable to the Required Backstop Parties.

**(d)** The Confirmation Order shall:

(i) authorize the Debtors and the Reorganized Debtors to take all actions necessary or appropriate to enter into, implement and consummate any contracts and other agreements or documents created in connection with the Plan;

(ii) decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(iii) authorize the Reorganized Debtors to issue the New Common Stock pursuant to the exemption from registration under the Securities Act provided by Section 1145 of the Bankruptcy Code or some other exemption from such registration;

(iv) decree that the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Orders; and

(v) authorize the implementation of the Plan in accordance with its terms.

**12.2    Conditions to the Effective Date.**

**(a)** Unless the Bankruptcy Court orders otherwise, the Confirmation Order, in form and substance satisfactory to the Debtors and the Required Backstop Parties, shall have been entered on or before June 18, 2010 and shall be in full force and effect and there shall not be a stay or injunction in effect with respect thereto.

**(b)** The Reorganized Debtors shall have entered into the Exit Financing Agreement and such agreement shall be consummated.

**(c)** On or prior to the Effective Date, and as a condition to the Effective Date, the Debtors shall have arranged and paid for tail coverage under a directors' and officers' liability insurance policy for the current and former directors and officers of the Debtors as set forth in Article 7.8 of the Plan and as provided in the Commitment Letter.

**(d)** The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents that are necessary to implement the Plan and required by law, regulation, or order.

**(e)** All actions, documents, certificates, and agreement necessary to implement this Plan shall have been effected and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

**(f)** The Debtors shall have conducted the Rights Offering consistent with this Plan and the Rights Offering Procedures.

**(g)** All fees and expenses relating to the Commitment Letter (expressly including the fees and expenses of the Prepetition Agents) shall have been paid as required by the Approval Order and this Plan; *provided, however*, that the Equity Put Fee shall be payable in cash or credited against any obligation under the Commitment Letter to purchase additional shares of New Common Stock at the discretion of the Backstop Parties.

**(h)** The Sanction Order shall have been entered on or before June 18, 2010 and not be subject to any stay.

**(i)** The Canadian Plan shall have become effective in accordance with its terms, the Sanction Order and the CCAA, which shall include the repayment of the Second Lien Credit Agreement Obligations in full in cash on the Effective Date.

**(j)** The Effective Date shall occur on or before July 2, 2010, unless otherwise agreed in writing by each of the Backstop Parties.

**12.3    Effect of Failure of Conditions to Effective Date.**

If the conditions precedent specified in Article 12.2 have not been satisfied or waived (i) the Confirmation Order shall be vacated, (ii) no distributions under the Plan shall be made, (iii) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) all the Debtors' obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

**12.4    Waiver of Conditions to Confirmation or Consummation.**

The conditions set forth in Articles 12.1 and 12.2 of the Plan may be waived, in whole or in part, by the Debtors and the Required Backstop Parties, without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing. The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**12.5    Effective Date.**

The Effective Date shall be a Business Day, specified by the Debtors, that is no more than five (5) days after the day on which all of the conditions specified in Articles 12.1 and 12.2 have been satisfied or waived; *provided, however*, that the Effective Date shall be no later than July 2, 2010.

## ARTICLE XIII

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, subject to the terms of the Cross-Border Protocol, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including, among others, the following matters:

        **(a)**     to hear and determine motions for (i) the assumption or rejection or (ii) the assumption and assignment of executory contracts or unexpired leases to which any of the Debtors are a party or with respect to which any of the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of cure, if any, required to be paid;

        **(b)**     to adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases, the Plan, or that were the subject of proceedings before the Bankruptcy Court prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies and issues arising from or relating to any of the foregoing;

        **(c)**     to adjudicate any and all disputes arising from or relating to the distribution or retention pursuant to the Plan of the New Common Stock or other consideration under the Plan;

        **(d)**     to ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished as provided herein;

        **(e)**     to hear and determine any and all objections to the allowance or estimation of Claims or Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any Claim or Interest, in whole or in part;

        **(f)**     to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

        **(g)**     to issue orders in aid of execution, implementation, or consummation of the Plan;

        **(h)**     to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

        **(i)**     to hear and determine all applications for allowance of compensation and reimbursement of Professional Claims under the Plan or under sections 328, 330(a), 331, or 503 of the Bankruptcy Code;

        **(j)**     to determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto;

(k)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(l)     to hear and determine all suits or adversary proceedings to recover assets of any of the Debtors and property of their Estates, wherever located;

(m)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n)     to resolve any matters relating to the pre- and post-confirmation sales of the Debtors' assets;

(o)     to hear any other matter not inconsistent with the Bankruptcy Code;

(p)     to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(q)     to enter a final decree closing the Chapter 11 Cases; and

(r)     to enforce all orders previously entered by the Bankruptcy Court;

provided, however, that the foregoing is not intended to (1) expand the Bankruptcy Court's jurisdiction beyond that allowed by applicable law, (2) impair the rights of (i) any governmental unit to invoke the jurisdiction of a court, commission or tribunal with respect to matters relating to such governmental unit's police and regulatory powers and (ii) any Person to contest the invocation of any such jurisdiction. Nothing herein shall impair the rights of any Person to (i) seek the withdrawal of the reference in accordance with 28 U.S.C. § 157(d) and (ii) contest any request for the withdrawal of reference in accordance with 28 U.S.C. § 157(d).

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

### 14.1    Binding Effect.

Upon the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all current and former holders of Claims, all current and former holders of Interests, and all other parties-in-interest and their respective heirs, successors, and assigns.

### 14.2    Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as of the entry of the Confirmation Order as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date. The Reorganized Debtors shall continue to pay fees pursuant to section 1930 of title 28 of the United States Code until the earlier of the entry of an order dismissing, converting or closing the Chapter 11 Cases.

### 14.3 Payment of Fees and Expenses of Prepetition Agents, Backstop Parties and Backstop Party Professionals.

Any and all outstanding reasonable and documented fees and expenses of the Prepetition Agents, the Backstop Parties and the Backstop Party Professionals shall be paid in full in Cash by the Debtors on the Effective Date; provided, however, to the extent not otherwise reimbursed for reasonable fees and expenses incurred in connection with distributions made under the Plan, on the Effective Date or as soon as reasonably practicable thereafter (and, thereafter, upon request by a Prepetition Agent with respect to fees and expenses of such Prepetition Agent relating to post-Effective Date service under this Plan), the Reorganized Debtors shall pay in full in Cash all outstanding reasonable and documented fees and expenses of the Prepetition Agents and their respective counsel and other advisors that are incurred in connection with making such distributions under the Plan.

### 14.4 Post-Confirmation Reporting.

The Reorganized Debtors shall file reports of their respective activities and financial affairs with the Bankruptcy Court on a quarterly basis, within thirty (30) days after the conclusion of each such period, or within such other period as they may agree mutually with the Office of the United States Trustee until the close of the Chapter 11 Cases. In consultation with the Office of the United States Trustee, the Reorganized Debtors shall prepare such reports substantially consistent with (both in terms of content and format) the applicable Bankruptcy Court and United States Trustee guidelines.

### 14.5 Modification and Amendments.

The Debtors, with the consent of the Backstop Parties (which consent shall not be unreasonably withheld), may alter, amend, or modify the Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing. The Debtors, with the consent of the Backstop Parties (which consent shall not be unreasonably withheld), may alter, amend, or modify any Exhibits to the Plan and Plan Supplement documents under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan with respect to any Debtor as defined in section 1101(2) of the Bankruptcy Code, any Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan.

### 14.6 Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1001 and 1127(b) of the Bankruptcy Code.

### 14.7 Request for Expedited Determination of Taxes.

The Reorganized Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns (other than federal income tax returns) filed by it, or to be filed by it, for any and all taxable periods ending after the Petition Date through the Effective Date. The Reorganized Debtors or the Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

**14.8    Withholding and Reporting Requirements.**

In connection with the Plan and all instruments issued in connection therewith and distributions thereunder, the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**14.9    Revocation, Withdrawal, or Non-Consummation.**

(a)    **Right to Revoke or Withdraw.**  Each of the Debtors reserves the right to revoke or withdraw the Plan with respect to such Debtor at any time prior to the Effective Date.

(b)    **Effect of Withdrawal, Revocation, or Non-Consummation.**  If any of the Debtors revokes or withdraws the Plan as to such Debtor prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan with respect to such Debtor or Debtors (including the fixing or limiting to an amount certain any Claim or Class of Claims with respect to such Debtor or Debtors, or the allocation of the distributions to be made hereunder), the assumption or rejection of executory contracts or leases effected by the Plan with respect to such Debtor or Debtors, and any document or agreement executed pursuant to the Plan with respect to such Debtor or Debtors shall be null and void as to such Debtor or Debtors.  In such event, nothing contained herein or in the Disclosure Statement, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims by or against such Debtor or Debtors or any other Person, to prejudice in any manner the rights of any such Debtor or Debtors, the holder of a Claim or Interest, or any other Person in any further proceedings involving such Debtor or Debtors or to constitute an admission of any sort by the Debtors or any other Person.  Notwithstanding anything to the contrary, in the event that any one or more of the Debtors shall revoke or withdraw the Plan as to itself prior to the Effective Date, the Effective Date shall otherwise occur.

**14.10    Notices.**

Any notice required or permitted to be provided to the Debtors or the Backstop Parties shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

**If to the Debtors:**

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York  10036
Attention:  Ira S. Dizengoff, Esq.


Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave., NW
Washington, DC  20036
Attention:  Scott L. Alberino, Esq.

**If to the Backstop Parties:**

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Attention: David M. Feldman, Esq. and Matthew Williams, Esq.

Ropes & Gray, LLP
1211 Avenue of the Americas
New York, NY 10036
Attention: Mark R. Somerstein, Esq.

**If to the Canadian Petitioners:**

Fraser Milner Casgrain LLP
1 First Canadian Place, 39th Floor
100 King Street West
Toronto, Ontario, Canada M5X 1B2
Attention: Shayne Kukulowicz

(Counsel to the Canadian Petitioners)

FTI Consulting, Canada ULC, in its capacity as Monitor of Trident Exploration Corp.,
Fort Energy Corp., Fenergy Corp., 981384 Alberta Ltd., 981405 Alberta Ltd., 981422
Alberta Ltd., Trident Resources Corp., Trident CBM Corp., Aurora Energy LLC, Nexgen
Energy Canada, Inc. and Trident USA Corp.
TD Waterhouse Tower, Suite 2010
79 Wellington Street
Toronto, ON, M5K 1G8
Attention: Nigel D. Meakin

(Monitor in the Canadian Proceedings)

McCarthy Tétrault LLP
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario M5K 1E6
Attention: Sean Collins

(Counsel to the Monitor in the Canadian Proceedings)


### 14.11    Term of Injunctions or Stays.

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays
provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and
extant on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 14.12    Severability.

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held

by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (with the consent of the Required Backstop Parties), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, with the consent of the Required Backstop Parties, the remainder of the terms and provisions of the Plan will be deemed to remain in full force and effect and will be in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan or Reorganization, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.13    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware shall govern the construction and implementation of the Plan, any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control). Corporate governance matters shall be governed by the laws of the state of incorporation of the applicable Debtor.

### 14.14    Entire Agreement.

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 14.15    Waiver or Estoppel.

Upon the Effective Date, each holder of a Claim or Interest shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtors and/or their counsel, or any other party, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court.

### 14.16    Conflicts.

In the event that the provisions of the Disclosure Statement and the provisions of the Plan conflict, the terms of the Plan shall govern.

Dated:  March 29, 2010                    Respectfully submitted,


                                          By: /s/ *Todd A. Dillabough*
                                          Name:  Todd A. Dillabough
                                          Title:  President, CEO, COO and Director